No. 16-4343

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

QUINTIN ANTONIO BELL,

*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the District of Maryland, No. 8:14-cr-531

_____

## PETITION FOR PANEL REHEARING OR
## REHEARING EN BANC

_____

James Wyda
OFFICE OF FEDERAL PUBLIC DEFENDER
District of Maryland

Paresh Patel
  *Counsel of Record*
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600

Miguel A. Estrada
Alex Gesch
Nathan H. Jack
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
(202) 955-8500

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ii

FRAP 35(b)(1) AND LOCAL RULE 40(b) STATEMENT .......................... 1

BACKGROUND ....................................................................................... 3

REASONS FOR GRANTING THE PETITION ....................................... 5

I.  The Panel Majority's Decision Conflicts With Supreme Court
    And Fourth Circuit Precedent Regarding The Standard For
    Custodial Interrogation Under *Miranda*. ....................................... 5

II. The Panel Majority's Application Of The Armed Career
    Criminal Act's Force Clause Disregards Controlling State
    Law In Contravention Of This Court's Precedent. ....................... 12

CONCLUSION ...................................................................................... 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Castillo v. Holder*,
    776 F.3d 262 (4th Cir. 2015)................................................. 19

*Douglas v. State*,
    267 A.2d 291 (Md. Ct. Spec. App. 1970)............................ 13

*Giles v. State*,
    261 A.2d 806 (Md. Ct. Spec. App. 1970)................... 13, 15, 18

*Gonzales v. Duenas-Alvarez*,
    549 U.S. 183 (2007) ........................................................... 15

*Grueninger v. Dir., Va. Dep't of Corr.*,
    813 F.3d 517 (4th Cir. 2016)................................................. 7

*J.D.B. v. North Carolina*,
    564 U.S. 261 (2011) ............................................................. 6

*Johnson v. United States*,
    559 U.S. 133 (2010) ........................................................... 12

*Larios-Reyes v. Lynch*,
    843 F.3d 146 (4th Cir. 2016)............................................... 12

*Mathis v. United States*,
    136 S. Ct. 2243 (2016)............................................. 16, 18, 19

*Miranda v. Arizona*,
    384 U.S. 436 (1966)............................................................. 3

*Moncrieffe v. Holder*,
    569 U.S. 184 (2013)........................................................... 15

*Rhode Island v. Innis*,
    446 U.S. 291 (1980)............................................. 1, 5, 6, 7, 9

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Aparicio-Soria,*
   740 F.3d 152 (4th Cir. 2014).....................................2, 5, 12, 14, 15, 19

*United States v. Bankston,*
   2018 WL 4016853, — F.3d — (9th Cir. Aug. 23, 2018) ......................18

*United States v. Boman,*
   873 F.3d 1035 (8th Cir. 2017)..............................................................18

*United States v. Camp,*
   2018 WL 4265749, — F.3d — (6th Cir. Sept. 7, 2018) ......................17

*United States v. Henley,*
   984 F.2d 1040 (9th Cir. 1993)................................................................8

*United States v. Johnson,*
   734 F.3d 270 (4th Cir. 2013)............................................................1, 8

*United States v. Mobley,*
   40 F.3d 688 (4th Cir. 1994)...................................................................9

*United States v. O'Connor,*
   874 F.3d 1147 (10th Cir. 2017)...........................................................17

*United States v. Parral-Dominguez,*
   794 F.3d 440 (4th Cir. 2015).........................................................5, 12

*United States v. Rambo,*
   365 F.3d 906 (10th Cir. 2004)........................................................7, 11

*United States v. Smith,*
   582 F. App'x 590 (6th Cir. 2014) .......................................................16

*United States v. Soto,*
   953 F.2d 263 (6th Cir. 1992)...............................................................11

*United States v. Swanson,*
   635 F.3d 995 (7th Cir. 2011)................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Titties,*
    852 F.3d 1257 (10th Cir. 2017)............................................................ 16

*United States v. Vail-Bailon,*
    868 F.3d 1293 (11th Cir. 2017)............................................................ 16

*United States v. Ventura,*
    85 F.3d 708 (1st Cir. 1996) ..................................................................7

*United States v. Winston,*
    850 F.3d 677 (4th Cir. 2017)......................................................... 12, 19

*Whack v. State,*
    416 A.2d 265 (Md. 1980) ................................................................... 19

**Statutes**

18 U.S.C. § 924.........................................................................2, 4, 13, 18

**Rules**

Fed. R. App. P. 35 ..................................................................2, 10, 11, 17

Fed. R. App. P. 40 .................................................................................2

## FRAP 35(b)(1) AND LOCAL RULE 40(b) STATEMENT

The panel majority's opinion does not justify Mr. Bell's conviction or his 40-year sentence, and the multiple conflicts with Supreme Court and Fourth Circuit precedent created by the majority's legal errors on questions of exceptional importance warrant rehearing.

First, the panel majority's *Miranda* analysis drastically departs from the required standard under *Rhode Island v. Innis*, 446 U.S. 291 (1980). To determine whether someone was interrogated within the meaning of *Miranda*, *Innis* requires courts to apply an objective test "focus[ing] primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. at 301. But in affirming the district court's denial of a motion to suppress Mr. Bell's statements, the panel majority—over Judge Wynn's well-reasoned dissent—looked almost exclusively to the subjective intent of the officer to conclude that Mr. Bell was not interrogated. It treated the officer's intent as dispositive, contradicting *Innis*, precedents of this Court (*e.g.*, *United States v. Johnson*, 734 F.3d 270, 276 (4th Cir. 2013)), and other Courts of Appeals that have faithfully followed *Innis*'s objective, suspect-focused test. Correcting the majority's legal error is important both to ensure conformity with these

precedents, Fed. R. App. P. 35(b)(1)(A)-(B), and because a proper applica-
tion of *Innis* demonstrates that Mr. Bell was interrogated, Fed. R. App.
P. 40(a)(2).

Second, the panel majority's application of the Armed Career Crim-
inal Act ("ACCA") directly contradicts this Court's analysis in *United
States v. Aparicio-Soria*, 740 F.3d 152, 156-58 & n.4 (4th Cir. 2014) (en
banc). The panel majority affirmed a 15-year mandatory minimum sen-
tence under the ACCA for crimes encompassing the use, attempted use,
or threatened use of violent force against the "*person*" of another, 18
U.S.C. § 924(e)(2)(B)(i) (emphasis added), notwithstanding two Maryland
appellate decisions concluding that Maryland robbery (the prior crimes
of conviction) could be accomplished merely by threats to *property*. The
panel majority dismissed these cases as "dicta." *Aparicio-Soria*, in con-
trast, explicitly relied on dicta from a single state-court opinion to deter-
mine whether a state-law crime qualifies categorically as a crime of vio-
lence. 740 F.3d at 156-58 & n.4.

## BACKGROUND

Mr. Bell was indicted in the District of Maryland on four counts including drug charges and possession of a firearm by a felon. Op. 3. Before trial, Mr. Bell moved to suppress statements he made about a rifle recovered during the execution of a no-knock warrant at his residence. J.A.17-18. The district court denied the motion to suppress, notwithstanding that Mr. Bell answered an officer's question while in custody and without any of the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). When the question was posed by the officer, Mr. Bell was seated next to his wife, handcuffed. The officer did not specify to whom of the two spouses the question was addressed. *See* Op. 9, 12.

Following trial, the jury convicted on all four counts, and the district court sentenced Mr. Bell to a mandatory minimum of 40 years' imprisonment, including a 15-year mandatory minimum sentence resulting from two 1985 Maryland robbery convictions that the district court concluded were predicate violent felonies under the ACCA. Op. 8.

A divided panel of this Court affirmed. The panel majority affirmed the district court's ruling on the motion to suppress Mr. Bell's statements, concluding that Mr. Bell was not subject to express questioning or its

functional equivalent under *Innis*. Op. 13. The majority based this ruling on Agent Oliver's testimony that he "directed [his] question" to Mr. Bell's wife and was "looking at her in the eye," Op. 9 (quoting record), as well as its view that "[t]he question was not posed to Bell and did not seek a response from him, nor was there any evidence that it was intended to," Op. 12.

As relevant here, the panel majority also affirmed Mr. Bell's sentence, including the district court's application of a 15-year mandatory minimum sentence based on its finding that Mr. Bell's two 1985 Maryland robbery convictions qualified as predicate "violent felony" convictions under the ACCA, 18 U.S.C. § 924(e)(1). Op. 29-30. The majority acknowledged statements from two Maryland appellate courts that the "fear" required to commit common-law robbery could include injury to *property*, as opposed to injury to a person, but it rejected those statements as dicta. Op. 27-28.

Judge Wynn dissented. He criticized the *Miranda* analysis because the majority, like the district court, improperly focused on the officer's stated intent to direct his question to Mrs. Bell, rather than an objective analysis from the "*perspective of [the] Defendant*." Dissent 31. Judge

4

Wynn also rejected the majority's application of the ACCA to Mr. Bell's 1985 Maryland robbery convictions. *See* Op. 28. He explained that the majority improperly discounted multiple Maryland appellate decisions stating that Maryland robbery can be committed by threats to property as dicta in direct contravention of the en banc Fourth Circuit's approach to interpretation of state law in *Aparicio-Soria*, 740 F.3d at 156-58 & n.4, as well as the decisions of other Courts of Appeals. Dissent 32. Judge Wynn concluded that the Maryland decisions foreclosed applying the ACCA to Mr. Bell. *Id.* (citing *United States v. Parral-Dominguez*, 794 F.3d 440, 445-46 (4th Cir. 2015)).

## REASONS FOR GRANTING THE PETITION

### I. The Panel Majority's Decision Conflicts With Supreme Court And Fourth Circuit Precedent Regarding The Standard For Custodial Interrogation Under *Miranda*.

The panel majority relied almost exclusively on the officer's subjective intent in its determination that Mr. Bell was not interrogated under *Miranda*. That approach is flatly inconsistent with Supreme Court and Fourth Circuit case law declaring that the test for custodial interrogation under *Miranda* is objective. *E.g.*, *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980). The panel majority's approach to *Miranda* and *Innis* stands

alone—against the Supreme Court and all other Courts of Appeals—in concluding that officer intent, not the objective circumstances of the encounter from the suspect's perspective, reigns supreme in assessing whether a suspect was interrogated. Rehearing is necessary to ensure conformity with Supreme Court and Fourth Circuit precedent.

*Miranda*'s safeguards are triggered by custodial interrogation, and the Supreme Court has repeatedly held that the test for custodial interrogation is objective and without regard for the "underlying intent of the police." *Innis*, 446 U.S. at 300-01; *see also J.D.B. v. North Carolina*, 564 U.S. 261, 270-71 (2011) (emphasizing that whether a suspect is "in custody" is "an objective inquiry" and that "subjective views … are irrelevant" (quotation marks omitted)). Interrogation can occur through express questioning or its functional equivalent. *Innis*, 446 U.S. at 300-01. The functional equivalent of express questioning includes any words or actions by the police "that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. at 301 (footnote omitted).

As an objective test, the Supreme Court mandated that courts "focus[] primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. at 301. In fact, *Innis* outlines that the officer's subjective intent is relevant only insofar as it illuminates the objective inquiry:

> A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. This is not to say that the intent of the police is irrelevant, for it may well have a bearing *on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response*.

*Id.* at 301 & n.7 (emphasis added).

Until the panel majority's opinion, this Court and other Courts of Appeals had scrupulously adhered to this objective standard. Dissent 37; *see also Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 527 (4th Cir. 2016) (referencing "*Innis*'s objective standard"); *United States v. Swanson*, 635 F.3d 995, 1002 (7th Cir. 2011); *United States v. Rambo*, 365 F.3d 906, 909, 910 (10th Cir. 2004); *United States v. Ventura*, 85 F.3d 708, 711

(1st Cir. 1996); *United States v. Henley*, 984 F.2d 1040, 1043 n.3 (9th Cir. 1993).[1]

The district court neglected to apply this governing standard. Judge Wynn observed in dissent that "[t]he district court rested its decision *entirely* on 'Agent Oliver's testimony that he did direct the question at Ms. Bell,' not at Defendant." Dissent 39. "But nowhere in the district court's oral ruling, or its earlier oral factual findings, did the district court consider the relevant question: whether a reasonable suspect in Defendant's position would have believed that Special Agent Oliver's question was directed at Defendant." *Id.*

The panel majority repeated the district court's error, focusing primarily on Agent Oliver's subjective intent while ignoring the objective circumstances of the questioning. Dissent 31-32, 40, 43 n.3. In particular, the majority concluded there was no interrogation because "[t]he

---

[1]  As Judge Wynn's dissent explained, the objective, suspect-based approach applies to both express questioning and its functional equivalent, especially for courts like this one in which express questioning is not an interrogation under *Miranda* if the questions were "not reasonably likely to elicit incriminating responses." Dissent 37-39 (quoting *United States v. Johnson*, 734 F.3d 270, 276 (4th Cir. 2013)).

question was not posed to Bell and did not seek a response from him, nor was there any evidence that it was intended to." Op. 12; *see also* Op. 9. The majority also repeatedly emphasized the officer-safety rationale behind Agent Oliver's question. Op. 4, 9, 12.[2]

The panel majority thus treated Agent Oliver's testimony about his intent as dispositive—completely backward from the approach the Supreme Court requires. In fact, the majority embraced its reliance on officer intent. The majority quoted from *Innis* that "'the intent of the police … may well have a bearing on' the inquiry," Op. 11, but a critically important qualifier connects intent to the objective test. That is, intent "may well have a bearing on *whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response*." *Innis*, 446 U.S. at 301 n.7 (emphasis added). The panel majority did not explain how Agent Oliver's subjective intent satisfies *Innis*'s objective standard. Nor could it.

---

[2] As Judge Wynn's dissent observed, the panel majority declined to discuss the district court's separate ground for admission: the public safety exception. "For good reason; this case is on all fours with [*United States v. Mobley*, 40 F.3d 688 (4th Cir. 1994)], in which this Court declined to apply the public safety exception." Dissent 41 n.2.

*Innis*'s objective inquiry compels a different analysis. As discussed in Judge Wynn's dissent, a proper analysis would have assessed whether an objective observer from Mr. Bell's perspective would conclude that Agent Oliver's question was directed to him, or whether the statements were reasonably likely to elicit an incriminating response. Dissent 40. Had the panel majority applied the correct, objective standard, it would have considered these questions in light of Mr. Bell's close proximity behind his wife while both were shackled; Agent Oliver's failure to address Mrs. Bell or instruct her to answer; Mr. Bell's confused state from the no-knock warrant; and the likelihood that an answer to Agent Oliver's question would implicate Mr. Bell in the offense under investigation. Dissent 40-42. Because the majority committed legal error in using the wrong test, it also reached the wrong result.

Review is warranted because, if the panel majority's decision and reasoning were to stand, this Court would be the only Court of Appeals to contradict Supreme Court precedent by elevating the officer's subjective intent over *Innis*'s objective inquiry—and, indeed, to have done so in a case in which the objective facts render inescapable the conclusion that the defendant was interrogated under *Innis*. Fed. R. App. P.

35(b)(1)(A)-(B).  To be sure, some courts have noted that officer intent may be relevant to the inquiry—but these courts all acknowledge its limited role.  *See, e.g.*, *Rambo*, 365 F.3d at 909, 910 ("It is true that an investigating officer's intention may be relevant, but it is the objectively measured tendency of an action to elicit an incriminating response which is ultimately determinative."); *United States v. Soto*, 953 F.2d 263, 265 (6th Cir. 1992) ("Absence of intent to interrogate, while not irrelevant, is not determinative of whether police conduct constitutes interrogation.").  And no court until the panel majority has gone so far as to treat the officer's intent as dispositive and jettison what should be the dispositive factor—the objective circumstances as they bear on whether the suspect was expressly questioned or whether the officer's conduct was reasonably likely to elicit an incriminating response.  Unless this error is corrected, suspects in the Fourth Circuit may be stripped of *Miranda*'s procedural safeguards based on appeals to officers' underlying intent, illustrating the exceptional importance this issue presents.  Fed. R. App. P. 35(b)(1)(B).

## II.   The Panel Majority's Application Of The Armed Career Criminal Act's Force Clause Disregards Controlling State Law In Contravention Of This Court's Precedent.

Review is also warranted based on the panel majority's holding that Mr. Bell's 1985 convictions for Maryland robbery qualified as violent felonies under the ACCA's force clause.  Op. 29.  The majority reached that result by rejecting as dicta statements in two Maryland appellate court decisions concluding that Maryland robbery could be accomplished merely by threats of injury to property.  But that reasoning squarely contradicts this Court's en banc decision in *United States v. Aparicio-Soria*, 740 F.3d 152, 156-58 & n.4 (4th Cir. 2014) (en banc), which explicitly relied on dicta to conclude that a state-law offense was not a crime of violence.

Mr. Bell's prior convictions for Maryland robbery are analyzed under the categorical approach, Op. 22, which requires courts to determine the elements of the crime by "look[ing] to the decisions of [the State's] appellate courts."  *Larios-Reyes v. Lynch*, 843 F.3d 146, 152 (4th Cir. 2016); *United States v. Winston*, 850 F.3d 677, 684 (4th Cir. 2017); *Johnson v. United States*, 559 U.S. 133, 138 (2010); Op. 23.  And, in *United States v. Parral-Dominguez*, 794 F.3d 440, 445-46 (4th Cir. 2015), this

12

Court held that where a state offense allowed for conviction solely based on harm to property, the offense did not constitute a crime of violence. The government also conceded in a prior case that threats against property were insufficient to satisfy the force clause. Dissent 46.

The panel majority's decision undermines these holdings. As the majority acknowledged, two Maryland appellate court decisions predating Mr. Bell's convictions concluded that the "fear" required to commit Maryland robbery may consist merely of injury to property. Op. 28; *Giles v. State*, 261 A.2d 806, 807-08 (Md. Ct. Spec. App. 1970) (stating that the "fear" required to commit the crime "may be of injury to the person or to property, as for example, a threat to burn down a house"); *Douglas v. State*, 267 A.2d 291, 295 (Md. Ct. Spec. App. 1970) ("Nor need the fear be of bodily injury at all."). Under a straightforward analysis, Mr. Bell's Maryland robbery convictions thus do not categorically satisfy the ACCA's "force" clause. *See* 18 U.S.C. § 924(e)(2)(B)(i).

In direct conflict with this Court's approach to interpreting state law, the panel majority set aside these definitive statements of Maryland law as "dicta" because the "actual holdings in those cases" involved threats of harm to a person. Op. 28. That was error. As Judge Wynn

13

observed, the panel majority's reasoning runs into head-on collision with this Court's en banc decision in *Aparicio-Soria*, 740 F.3d at 156-58 & n.4. Dissent 46.

In *Aparicio-Soria*, this Court considered whether the Maryland crime of resisting arrest qualified categorically as a "crime of violence" under the force clause of the illegal reentry Sentencing Guideline. *Id.* at 154.[3] This Court held that it did not, and expressly based its decision on "dicta" from a single Maryland Court of Appeals decision holding that the crime extended to non-violent conduct. *Id.* at 156-58 & n.4; *id.* at 164 (Wilkinson, J., dissenting) (observing that en banc majority relied on dicta to interpret state law). For precisely the same reason, *Giles* and *Douglas* must control here, notwithstanding the panel majority's conclusion that the statements in those cases were dicta. Op. 28.[4]

---

[3]  The language of the force clause in the ACCA and the reentry Guideline is "identical," and this Court relies on case law construing one provision to construe the other. *Id.*

[4]  Neither the government nor the panel majority pointed to any opinion by the Maryland Court of Appeals indicating that *Giles*'s and *Douglas*'s characterization of the fear element as encompassing threats to property no longer remains good law. Dissent 51.

14

The panel majority further contradicted *Aparicio-Soria* when it argued that Mr. Bell must demonstrate a "'realistic probability'" that the state would apply the Maryland robbery statute to a case involving the use or threat to use a deadly weapon against property. Op. 29 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)). That analysis was also rejected in *Apraricio-Soria*, where the en banc majority followed interpretive dicta from a Maryland court notwithstanding the government's submission of "thirty-eight published opinions" by Maryland appellate courts—all of which arguably involved a defendant's use of violent force in the state-law crime at issue. *Id.* at 157-58 (majority op.).

As in *Aparicio-Soria*, this Court need not "hypothesize about whether there is a 'realistic probability'" that the fear used to commit Maryland robbery extends to the use or threat to use a deadly weapon against property because "we know" that it does based on definitive statements of the Maryland appellate courts in *Giles* and *Douglas*. *Aparicio-Soria*, 740 F.3d at 158. *Giles* provided an express example— "'threat[ening] to burn down a house'—without ever applying physical force against the person of the victim." Dissent 48 (quoting *Giles*, 261

15

A.2d at 807-08). Numerous Courts of Appeals have similarly rejected the panel majority's suggestion to apply a "realistic probability" analysis when the relevant state law is plain. *See United States v. Titties*, 852 F.3d 1257, 1275 & n.23 (10th Cir. 2017) (observing that the Supreme Court in *Mathis v. United States*, 136 S. Ct. 2243 (2016), did "not seek or require instances of actual prosecutions for the means that did not satisfy the ACCA"); *id.* (collecting cases, including *Aparicio-Soria* and decisions from the First, Third, Ninth, and Eleventh Circuits).

Without further review, the panel majority's rejection of binding state-court precedent in *Giles* and *Douglas* as dicta would also place this Court into conflict with other Courts of Appeals, which routinely rely on dicta in state-court opinions to determine whether a state offense properly was determined to be a crime of violence. *See, e.g.*, *United States v. Vail-Bailon*, 868 F.3d 1293, 1304 (11th Cir. 2017) (en banc) (relying on dicta in state court opinion to determine whether state offense was "crime of violence"); *id.* at 1322 (Rosenbaum, J. dissenting) (observing that state decision relied upon by majority was dicta); *United States v. Smith*, 582 F. App'x 590, 596 & n.5 (6th Cir. 2014) (relying on dicta in state court opinion to determine whether North Carolina common-law robbery was

16

a crime of violence because courts should "defer to the North Carolina Supreme Court on the interpretation of North Carolina law"), *vacated on other grounds* 135 S. Ct. 2930 (2015); *see also* Fed. R. App. P. 35(b)(1)(B) (noting that a question is of exceptional importance when it "involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals").

The plain conflict caused by the panel majority's decision cannot be wiped away by characterizing Mr. Bell's prior convictions as "Maryland armed robbery," as opposed to "simple robbery," as the majority attempted to do. Op. 26-27. As Judge Wynn explained, the majority's decision is in conflict with the decisions of numerous Courts of Appeals, which have held in "materially indistinguishable" contexts that a suspect can commit simple robbery or armed robbery by threatening a victim's property as opposed to his or her person. Dissent 49; *see, e.g.*, *United States v. Camp*, 2018 WL 4265749, at *6, — F.3d — (6th Cir. Sept. 7, 2018) (holding that Hobbs Act robbery is not a crime of violence because it can be accomplished merely by threats to property); *United States v. O'Connor*, 874 F.3d 1147, 1153-55, 1158 (10th Cir. 2017) (holding that Hobbs Act robbery does not constitute crime of violence because a suspect

17

could commit a robbery by saying to a victim, "If you don't give me $1 million, I won't hurt you, but I'll blow up an empty building you own"); *United States v. Boman*, 873 F.3d 1035, 1042-43 (8th Cir. 2017) (distinguishing between use of force against the "person of another" and the "property of another"); *United States v. Bankston*, 2018 WL 4016853, at *3, — F.3d — (9th Cir. Aug. 23, 2018) (holding that California robbery was "not a categorical match" for generic federal robbery because defendant could be convicted by making "mere threats to property, such as 'Give me $10 or I'll key your car' or 'Open the cash register or I'll tag your windows'" (internal quotation marks omitted)).

For the same reason, Maryland robbery—which can be accomplished by threatening harm to property, *see Giles*, 261 A.2d at 807-08—does not have as an essential element the use, attempted use, or threatened use of violent force against the "person" of another, 18 U.S.C. § 924(e)(2)(B)(i).[5]

---

[5]  In addition, under a proper application of *Mathis*, 136 S. Ct. at 2248, there was no such Maryland crime of "robbery with a deadly weapon" at the time of Mr. Bell's convictions. *Contra* Op. 26. As the majority concedes, Maryland appellate court decisions "described the 'dangerous or deadly weapon' component of § 488 as a *sentence enhancement* for the 'single common law offense' of simple robbery, as opposed to an *element*

This Court's precedents also foreclose following the three circuit-court decisions cited approvingly by the majority, which concluded that Maryland robbery constitutes a violent felony under the ACCA's force clause or similar statutory language. Op. 29-30. As Judge Wynn explained, these decisions either ignored entirely *Giles* and *Douglas* or rejected them on one or more grounds foreclosed by this Court's case law, including: (1) that the statements in *Giles* and *Douglas* were dicta; or (2) that *Giles* and *Douglas* were issued by intermediate appellate courts. Dissent 50-51; *see, e.g.*, *Aparicio-Soria*, 740 F.3d at 156-58 & n.4; *Winston*, 850 F.3d at 684 (observing that a "federal court applying the categorical approach to a state offense is bound by the interpretation of such offense articulated by that state's courts," including decisions of a state's "intermediate appellate court"); *Castillo v. Holder*, 776 F.3d 262, 268 n.3 (4th Cir. 2015) (holding that, after a state's highest court, a "state's intermediate appellate court decisions constitute the next best indicia of

---

of the distinct crime of armed robbery." Op. 24 (citing *Whack v. State*, 416 A.2d 265, 266 (Md. 1980)). Where, as here, binding state-court decisions distinguish between elements and means of committing a state-law crime, this Court "need only follow what [they] say[]." *Mathis*, 136 S. Ct. at 2256.

what state law is" (internal quotation marks omitted)). Although Fourth Circuit law forecloses that reasoning, the recurring questions addressed in those decisions further demonstrate the exceptional importance of the issues presented by this petition.

## CONCLUSION

The petition for panel rehearing or rehearing en banc should be granted.

Dated:  September 11, 2018                 Respectfully submitted,


James Wyda                                      /s/   Alex Gesch
OFFICE OF FEDERAL PUBLIC DEFENDER       Miguel A. Estrada
District of Maryland                    Alex Gesch
                                        Nathan H. Jack
Paresh Patel                            GIBSON, DUNN & CRUTCHER LLP
  *Counsel of Record*                   1050 Connecticut Avenue, N.W.
6411 Ivy Lane, Suite 710                Washington, DC  20036
Greenbelt, MD 20770                     (202) 955-8500
(301) 344-0600

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this petition complies with the applicable typeface, type-style, and type-volume limitations. This petition was prepared using a proportionally spaced type (New Century Schoolbook, 14 point). This petition also complies with Federal Rule of Appellate Procedure 35(b)(2)(A) and 40(b)(1) because, exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this petition contains 3,870 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this petition.


September 11, 2018             Respectfully submitted,


                               /s/ Alex Gesch
                              Alex Gesch
                              GIBSON, DUNN & CRUTCHER LLP
                              1050 Connecticut Avenue, N.W.
                              Washington, DC  20036

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system, which will automatically serve electronic copies upon counsel for all parties.

                                    /s/ Alex Gesch
                                Alex Gesch
                                GIBSON, DUNN & CRUTCHER LLP
                                1050 Connecticut Avenue, N.W.
                                Washington, DC  20036